UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
MICHAEL KOUROMIHELAKIS,       :
                              :
              Plaintiff,      :
                              :
v.                            :    Civil No. 3:13cv888(AWT)
                              :
HARTFORD FIRE INSURANCE       :
COMPANY,                      :
                              :
              Defendant.      :
                              :
------------------------------x
```

**RULING ON MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION**

Plaintiff Michael Kouromihelakis brings this six-count action against defendant Hartford Fire Insurance Company. Count One alleges willful interference in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"); Count Two alleges retaliation in violation of the FMLA; Count Three alleges discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"); Count Four alleges retaliation in violation of the ADA; Count Five alleges retaliation in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-58 et seq. ("CFEPA"); and Count Six alleges common law defamation.  The defendant has moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Count Three of the Complaint.  In

1

addition, the defendant has moved, pursuant to Rule 12(b)(1) and the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), to dismiss Counts One, Two, Four, Five and Six of the Complaint, or in the alternative, to compel arbitration and stay this action pending arbitration.  For the reasons set forth below, the motion is being granted in part and denied in part.

I.   **Factual Allegations**

"The complaint, which [the court] must accept as true for purposes of testing its sufficiency, alleges the following circumstances." Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir. 1997.

The plaintiff was employed by the defendant as a Regional Sales Consultant.  The plaintiff's job performance was excellent.  As a Regional Sales Consultant, the plaintiff's regular work hours were 9:00 a.m. to 6:00 p.m., with a one-hour lunch break usually taken from 1:00 p.m. to 2:00 p.m.  The plaintiff was an exempt employee, and was paid a salary rather than paid on an hourly basis.  As an exempt employee, the defendant's written tardiness policy did not apply to the plaintiff.

In November 2008, the plaintiff's father suffered a debilitating stroke, and thus suffers from a "serious health condition" as defined by the FMLA and a "disability" as defined by the ADA and CFEPA.  The plaintiff regularly was required to

2

assist in the care of his disabled father, and as a result, the plaintiff periodically was unable to report to work by 9:00 a.m.

The plaintiff made the defendant and his immediate supervisor, Cole Phillips ("Phillips"), aware of his father's disability and the fact that he periodically would be unable to report to work by 9:00 a.m. because of his duties in caring for his disabled father.  On several occasions, the plaintiff's superiors, including but not limited to Phillips, issued written warnings to him for violations of the defendant's tardiness policy that were directly related to the plaintiff's duties for caring for his disabled father.  On more than one occasion, the plaintiff made requests to Phillips to change his hours under the defendant's "flex time" policy in order to accommodate his duties in caring for his disabled father. Those requests were denied.

On or about January 4, 2012, the plaintiff was approved to take four hours of Personal Time Off ("PTO") in order to care for his disabled father.  The plaintiff arrived for work that day at 1:26 p.m.  However, Phillips considered the plaintiff to have been late.  As a result of this tardiness, the defendant terminated the plaintiff's employment.

On or about July 6, 2012, the plaintiff filed a charge of discrimination under the ADA and CFEPA with the Connecticut Commission on Human Rights and Opportunities ("CHRO").  On or

about November 16, 2012, the CHRO retained the plaintiff's complaint for a full investigation.

Approximately three weeks later, on or about December 6, 2012,[1] the defendant, through Ian Veitzer, falsely accused the plaintiff of having forged a document in January 2011.  On or about December 14, 2012, the defendant filed an amendment to the plaintiff's Form U5 with the Financial Industry Regulatory Authority ("FINRA"), falsely claiming that the plaintiff had engaged in fraud.

## II.  Legal Standard

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")).  "Nor does a complaint suffice if it tenders

---

[1] The date contained in the Complaint is December 6, 2013 (Compl., Doc. No. 1, ¶ 28), but the court construes this as a scrivener's error.

4

naked assertions devoid of further factual enhancement."
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,
550 U.S. at 557 (internal quotation marks omitted)).  "Factual
allegations must be enough to raise a right to relief above the
speculative level, on the assumption that all allegations in the
complaint are true (even if doubtful in fact)."  Twombly, 550
U.S. at 555 (citations omitted).  However, the plaintiff must
plead "only enough facts to state a claim to relief that is
plausible on its face."  Id. at 570.  "The function of a motion
to dismiss is 'merely to assess the legal feasibility of the
complaint, not to assay the weight of the evidence which might
be offered in support thereof.'"  Mytych v. May Dep't Store Co.,
34 F.Supp.2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy
Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779
(2d Cir. 1984)).  "The issue [on a motion to dismiss] is not
whether [the] plaintiff will prevail, but whether he is entitled
to offer evidence to support his claims."  United States v. Yale
New Haven Hosp., 727 F.Supp. 784, 786 (D. Conn. 1990) (citing
Scheuer, 416 U.S. at 232).

     In its review of a motion to dismiss for failure to state a
claim, the court may consider "only the facts alleged in the
pleadings, documents attached as exhibits or incorporated by
reference in the pleadings and matters of which judicial notice

may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

"A [claim] is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the [claim]." Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996). On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside the pleadings. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

## III. Discussion

### A. Count Three: Discrimination in Violation of the ADA

The plaintiff alleges in Count Three that the defendant discriminated against him in violation of the ADA "because of the known disability of his father." (Compl., Doc. No. 1, ¶ 38.)

The ADA makes it unlawful for a covered employer to "discriminate against a qualified individual on the basis of disability . . . ." 42 U.S.C. § 12112(a). The term "discrimination," as used under the ADA, is defined to include what courts have described as "associational discrimination" or

6

"association discrimination."  Specifically, the ADA prohibits employers from taking adverse employment action "because of the known disability of an individual with whom the qualified individual is known to have a relationship or association[.]" 42 U.S.C. § 12112(b)(4).  "The Second Circuit has not had occasion to construe the associational discrimination provision of the ADA."  Dessources v. Am. Conference Inst., No. 12 Civ. 8105 (PKC), 2013 WL 2099251, *3 (S.D.N.Y. May 15, 2013). However, courts in this Circuit have relied on the Tenth Circuit's decision in Den Hartog v. Wasatch Acad., 129 F.3d 1076 (10th Cir. 1997) and the Fourth Circuit's decision in Tyndall v. Nat'l Educ. Ctrs. Inc., 31 F.3d 209 (4th Cir. 1994).  See, e.g., Dollinger v. State Ins. Fund, 44 F. Supp. 2d 467, 480 (N.D.N.Y 1999).  In Den Hartog, the Tenth Circuit stated that:

> [T]o establish a prima facie case of "association discrimination" under [the] ADA . . . a plaintiff must demonstrate . . . [that] (1) the plaintiff was "qualified" for the job at the time of the adverse employment action; (2) the plaintiff was subjected to adverse employment action; (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

129 F.3d at 1085.  The fourth element was elaborated on by the Seventh Circuit in Larimer v. Int'l Bus. Machines Corp., 370 F.3d 698 (7th Cir. 2004).  In Larimer, the Seventh Circuit

7

identified three types of situations falling within the association provision of the ADA: "expense," "disability by association," and "distraction." See id. 370 F.3d at 700.[2]

Relevant to this motion is the third type of situation, i.e., "distraction." The Seventh Circuit explained "distraction" as when "the employee is somewhat inattentive at work because his spouse or child has a disability that requires his attention, yet not so inattentive that to perform to his employer's satisfaction he would need an accommodation, perhaps by being allowed to work shorter hours." Larimer, 370 F.3d at 700. In Tyndall, the Fourth Circuit stated that "the Interpretive Guidelines to the ADA provide that an employer may not make decisions based on the 'belie[f] that the [employee] would have to miss work' in order to take care of a disabled person." Tyndall, 31 F.3d at 214 (citing 29 C.F.R. § 1630, Appendix).

The court concludes that the plaintiff has alleged facts sufficient to plead a plausible "distraction" claim. The plaintiff has alleged that his father is disabled; that he regularly was required to care for his disabled father; that he periodically was unable to report to work on time due to his

---

[2] The plaintiff asserts that Tyndall v. Nat'l Educ. Ctrs. Inc., 31 F.3d 209 (4th Cir. 1994), identified a fourth category of claim. However, the discrimination based on association claim discussed in Tyndall was included in Larimer, and the Seventh Circuit called it "distraction." See Larimer, 370 F.3d at 700 (giving example of a "distraction" claim and citing to Tyndall).

duties in caring for his father; that the defendant was aware of
his father's disability and that was the reason for the
plaintiff's tardiness; that the plaintiff made requests to
change his work hours under the defendant's "flex time" policy
but those requests were denied; and that he was fired because of
the known disability of his father.  These allegations, taken as
true and read in a light most favorable to the plaintiff,
support a reasonable inference that the defendant's decision to
terminate the plaintiff was based on a belief that the plaintiff
would have to miss additional time at work in the future in
order to take care of his disabled father.

     The defendant contends that the plaintiff's "distraction"
claim is based on the allegation that the defendant failed to
accommodate the plaintiff's schedule to allow him to care for
his disabled father and that the plaintiff has not explicitly
alleged that the defendant terminated his employment based on
any belief or assumption about future absences relating to the
care of the plaintiff's disabled father.  However, the plaintiff
does not need to do so because the alleged facts are sufficient
to support a reasonable inference that the defendant terminated
the plaintiff's employment based on a belief about future
absences.

     The defendant also argues that the plaintiff has failed to
allege that he was able to regularly and reliably attend to his

job duties.  However, the plaintiff has alleged that his "job performance was excellent" (Compl., Doc. No. 1, ¶ 10) and that due to "his duties in caring for his disabled father, [he] periodically was not able to report to work by 9:00 a.m." (Id. ¶ 16.)  Based on these allegations, it would be reasonable to infer that apart from being periodically tardy due to his responsibilities with respect to his disabled father, the plaintiff was able to regularly and reliably attend to his job duties.

Accordingly, the motion to dismiss is being denied as to Count Three.

### B. Counts One, Two, Four, Five and Six

The defendant contends that the remaining claims are subject to a mandatory arbitration agreement.  Because the court is denying the motion with respect to Count Three, the court construes the defendant's motion as one to stay the action and compel arbitration of the remaining counts.

Under the FAA, written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The statute further provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration

proceed in the manner provided for in such agreement." Id. § 4. The Supreme Court has stated that "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original). "[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor . . . its enforceability or applicability to the dispute is in issue." Dedon GmbH v. Janus et Cie, 411 Fed. Appx. 361, 363 (2d Cir. 2011) (quoting Granite Rock Co. v. Int'l Bhd. Of the Teamsters, 561 U.S. 287, 299 (2010)) (emphasis in original).

"In the context of motions to compel arbitration . . . the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003).

In order to determine whether arbitration should be compelled with respect to Counts One, Two, Four, Five and Six, the court must conduct the following inquiries:

> [F]irst, it must determine whether the parties agreed
> to arbitrate; second, it must determine the scope of
> that agreement; third, if federal statutory claims are
> asserted, it must consider whether Congress intended
> those claims to be nonarbitrable; and fourth, if the

> court concludes that some, but not all, of the claims
> in the case are arbitrable, it must then decide
> whether to stay the balance of the proceedings pending
> arbitration.

JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004) (citation omitted).

It is undisputed that the plaintiff signed a Form U4, which provides, in pertinent part, that: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs . . . ."[3] (Defendant's Memorandum of Law in Support of Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration ("Def.'s Mem."), Ex. 1, Doc. No. 18-2, Section 15A, ¶ 5) (emphasis in original).  "[W]here, as here, the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability."  Harford Accident & Indem. Co. v. Swiss Reinsurance America Co., 246 F.3d 219, 226 (2d Cir. 2001).

### 1. Counts One, Two, and Five: FMLA and CFEPA Claims

The defendant asserts that the plaintiff's FMLA interference and retaliation claims and CFEPA retaliation claim fall within the scope of the arbitration agreement between the parties.  The court agrees.

---

[3] The SROs are self-regulatory organizations, such as FINRA.

Under FINRA, "a dispute must be arbitrated . . . if the dispute arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons."  FINRA Rule 13200(a).[4]  However, "[a] claim alleging employment discrimination, including sexual harassment, in violation of a statute, is not required to be arbitrated . . . ."  FINRA Rule 13201(a).  The scope of this exception was explained by FINRA's predecessor, the National Association of Securities Dealers ("NASD"), in a staff opinion letter to the Securities and Exchange Commission ("SEC") when the exception was first proposed.  In the letter the NASD stated:

> One commenter contends that the exception to the arbitration requirement should apply to all statutory employment claims, such as those under the Family and Medical Leave Act or ERISA, and not just to statutory claims of employment discrimination.  Some commenters express the view that the exception should be extended to all common law claims.  They believe that common law claims such as . . . defamation . . . often join statutory claims of employment discrimination.

(Def. Mem., Ex. 6, Doc. No. 18-3, April 14, 1998 Letter, 4.)

However, the NASD went on to explain:

> The NASD drafted the proposed rule carefully to specify that the exception for claims of statutory employment discrimination claims was in fact just that: an exception to the long-standing rule that requires arbitration of disputes between members and associated persons.  The interest groups that gave their views to the NASD during the consideration of

---

[4] The plaintiff does not dispute that he is an Associated Person and that the defendant is a Member.

> this rule change focused their concerns on employment
> discrimination claims made under Title VII of the
> Civil Rights Act of 1964 and other <u>federal anti-</u>
> <u>discrimination</u> legislation, not on other federal laws
> or common law claims <u>such as those listed above</u>.

(<u>Id.</u>) (emphasis added).  In addition, the SEC adopted the NASD's

interpretation in its order approving the exception.  <u>See</u> Self-

Regulatory Organizations; National Association of Securities

Dealers, Inc.; Order Granting Approval to Proposed Rule Change

Relating to the Arbitration of Employment Discrimination Claims,

63 Fed. Reg. 35299, 35302 and n.34 (1998).

The plaintiff has not proffered any evidence or argument to

cast doubt on the NASD's and the SEC's interpretation of the

exception.  <u>See</u> <u>Oppenheimer & Co., Inc. v. Neidhardt</u>, 56 F.3d

352, 357 (2d Cir. 1995) (finding motion to compel arbitration

was properly granted where defendants submitted evidence

demonstrating that arbitration clause applied and plaintiff

failed to impeach or effectively counter such evidence).

Therefore, in light of the NASD's and the SEC's interpretation

of the exception to mandatory arbitration under FINRA Rule

13201(a) and the principle that doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration,

the court concludes that Counts One and Two fall within the

scope of the arbitration agreement between the parties.  This

conclusion finds support in the decisions in other cases where

the issue has been addressed.  <u>See</u> <u>Herrera v. Katz Communs.,</u>

14

Inc., 532 F. Supp. 2d 644, 646 (S.D.N.Y. 2008) (granting motion to compel arbitration of plaintiff's FMLA claim); Serafin v. Connecticut, No. Civ.A. 3:98CV398 (CFD), 2005 WL 578321, *7, (D. Conn. Mar. 9, 2005) (finding plaintiff's decision to arbitrate FMLA rights permissible); Martin v. SCI Management L.P., 296 F. Supp. 2d 462, 467 (S.D.N.Y. 2003) (holding FMLA claims are arbitrable and noting that there is no indication of Congressional intent that FMLA claims are not arbitrable); Steward v. Paul, Hastings, Janofsky & Walker, LLP, 201 F. Supp. 2d 291, 292 (S.D.N.Y. 2002) (enforcing arbitration agreement with regard to FMLA and other claims).

With respect to the plaintiff's CFEPA retaliation claim, because the NASD and the SEC have interpreted the exception to apply to discrimination claims brought under federal statutes and CFEPA is state legislation, Count Five is not covered by the exception and falls within the scope of the arbitration agreement.

### 2. Count Four: Retaliation Claim under the ADA

It is undisputed that the plaintiff's claim of retaliation for filing an administrative complaint of discrimination in violation of the ADA arose out of the business activities between them.  The parties disagree about whether a retaliation claim is a discrimination claim such that it would fall under FINRA Rule 13201(a)'s exception to mandatory arbitration.

The defendant relies upon Burlington N. & Santa Fe Ry. Co.
v. White, 548 U.S. 53 (2006), for the proposition that anti-
discrimination and anti-retaliation statutory provisions are
conceptually distinct and serve distinct purposes.  In
Burlington, the Supreme Court stated that Title VII's anti-
discrimination provision "seeks to prevent injury to individuals
based on who they are, i.e., their status.  The antiretaliation
provision seeks to prevent harm to individuals based on what
they do, i.e., their conduct."  Id. at 63.  However, in CBOCS
West, Inc. v. Humphries, 553 U.S. 442 (2008), the Supreme Court
explained that both provisions of Title VII seek to prevent
different forms of discrimination.

> [I]n Burlington, a Title VII case, we distinguished
> between discrimination that harms individuals
> because of "who they are, i.e., their status," . . . and
> discrimination that harms "individuals based on what
> they do, i.e., their conduct," . . . .  Burlington did
> not suggest that Congress must separate the two in all
> events.

Id. at 455-56 (internal citation omitted); see also Gomez-Perez
v. Potter, 553 U.S. 474, 481 n.1 (2008) (disagreeing with the
dissent's statement that Burlington stands for the proposition
that anti-discrimination and anti-retaliation provisions are
conceptually distinct and serve distinct purposes).

Moreover, in Jackson v. Birmingham Bd. of Ed., 544 U.S. 167
(2005), the Supreme Court, in holding that Title IX's anti-
discrimination provision also prohibits retaliation, stated:

16

> Retaliation against a person because that person has
> complained of sex discrimination is another form of
> intentional sex discrimination . . . . Retaliation
> is, by definition, an intentional act.  It is a form
> of "discrimination" because the complainant is being
> subjected to differential treatment.  Moreover,
> retaliation is discrimination "on the basis of sex"
> because it is an intentional response to the nature of
> the complaint: an allegation of sex discrimination.

544 U.S. at 173-74 (internal citations omitted); accord Gomez-
Perez, 553 U.S. at 480-81 (extending reasoning in Jackson to
hold that the statutory phase "discrimination based on age" in
the Age Discrimination in Employment Act of 1967 includes
retaliation).

The defendant also cites to dicta in Univ. of Texas Sw.
Med. Ctr. v. Nassar, 133 S.Ct. 2517 (2013), for the proposition
that the ADA's anti-retaliation provision is conceptually
distinct from its anti-discrimination provision.  In Nassar, the
Supreme Court held that a Title VII retaliation claim requires a
different standard of proof than a Title VII discrimination
claim.  However, the Supreme Court in Nassar distinguished it
from CBOCS, Jackson, and Gomez on the basis that Nassar
addressed whether "every reference to race, color, creed, sex,
or nationality in an antidiscrimination statute is to be treated
as a synonym for 'retaliation.'"  Nassar, 133 S.Ct. at 2530.
Therefore, Nassar addressed a textual issue, which is different
from the question here of whether retaliation is a form of
discrimination.  In any event, the question here is answered by

17

the ADA's anti-retaliation provision, which consistent with the reasoning in CBOCS, Jackson, and Gomez, states: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a).  Therefore, the court concludes that Count Four falls within the FINRA exception to mandatory arbitration.

### 3. Count Six: Common Law Defamation Claim

The defendant argues that the plaintiff's common law defamation claim falls under the parties' arbitration agreement because the claim "arises out of the business activities" between the parties pursuant to FINRA Rule 13200(a).  The plaintiff contends that the defamation claim arises out of the defendant's conduct in response to the plaintiff's CHRO complaint after the plaintiff was terminated.

"In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [the court] focuse[s] on the factual allegations in the complaint rather than the legal causes of action asserted." Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir. 1987) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 623 n.9, 624 n.13 (1985)).  "If the allegations underlying the claims 'touch matters' covered by the parties'

18

[business activities], then those claims must be arbitrated, whatever the legal labels attached to them." Id.

Here, the plaintiff has alleged:

The Hartford . . . falsely accused Kouromihelakis of having forged a document in January, 2011, almost two years earlier.

On or about December 14, 2012, The Hartford filed an amendment of Kouromihelakis' Form U5 with the Financial Industry Regulatory Authority ("FINRA"), falsely claiming that Kouromihelakis had engaged in fraud.

(Compl., Doc. No. 1, ¶¶ 28-29.)  While the defendant filed the amended Form U5 after the plaintiff's termination, the alleged false statement directly concerns the plaintiff's conduct while he was employed by the defendant.  Moreover, in order to prove the defamation claim, the plaintiff must show that, inter alia, the defendant made a false statement, i.e., the plaintiff did not forge a document in January 2011.  See Cweklinsky v. Mobil Chemical Co., 364 F.3d 68, 73 (2d Cir. 2004) (citing Torosyan v. Boehringer Ingelheim Pharms, Inc., 234 Conn. 1 (1995)). "[T]ruth is an affirmative defense to defamation." Cweklinsky v. Mobile Chemical Co., 267 Conn. 210, 228 (2004).  Therefore, the underlying dispute in the defamation claim is whether the plaintiff forged a document in January 2011 while he was employed by the defendant.  This dispute falls squarely within the scope of FINRA Rule 13200(a) because it "arises out of the business activities" between the parties.

19

The plaintiff's contention that the defamation claim arises out of his filing of a CHRO complaint conflates the parties' dispute concerning the defendant's alleged motivation behind filing the amended Form U5 with the parties' dispute concerning the alleged false statement.  Therefore, the court concludes that Count Six is within the scope of the arbitration agreement between the parties.

### C.  Stay of the Proceedings

"The decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket."  Genesco, 815 F.2d at 856.  "Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit."  Id.

Here, only Counts Three and Four alleging violations of the ADA are not subject to arbitration.  Given that the plaintiff's FMLA claims and CFEPA claim are based on many of the same factual allegations as the ADA claims, the resolution of those claims in arbitration will simplify the resolution of the remaining claims.  Therefore, the court exercises its discretion to stay this action pending the outcome of arbitration.

### IV.  Conclusion

Accordingly, for the reasons set forth above, the defendant's Motion to Dismiss or, in the Alternative, to Stay

20

Proceedings and Compel Arbitration (Doc. No. 18) is hereby GRANTED in part and DENIED in part.  The parties shall proceed to arbitration on the claims in Counts One, Two, Five and Six.

This case is hereby STAYED, and the parties shall file a joint status report on the progress of the arbitration by March 2, 2015.

It is so ordered.

Signed this 29th day of September 2014 at Hartford, Connecticut.


                                        /s/
                        _____
                              Alvin W. Thompson
                        United States District Judge